IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAYAL BISWAS | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-cv-03284 |
| | § | |
| WAMU INVESTMENTS, INC., ET AL | § | JURY |
| | § | |
| *Defendants* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Dayal Biswas, complains of WaMu Investments, Inc., WaMu's former broker/representative, Edward Basham, A & O Life Funds, L.P., Life Fund 5.1, L.L.C., A&O Life Fund Management, L.L.C., A&O Bonded Life Settlements, L.L.C., Ken Frank, K & P Capital Management, L.L.C., and Adley Husni Abdulwahab (collectively, "Defendants") as follows:

## PARTIES

1. Plaintiff, Dayal Biswas ("Biswas"), is an individual residing in Houston, Texas.

2. WaMu Investments, Inc. ("WaMu"), is a Washington corporation doing business in the State of Texas. It has been served with process upon its registered agent and has answered.

3. Edward Basham ("Basham") is an individual account representative, formerly representing WaMu. Basham worked in one of WaMu's Houston, Texas offices. He can be served with process at his home address, last known to be 9523 Deer Run Ave., Zachary, LA 70791.

4. A&O Life Funds, L.P. ("A&O") has been served with process at its principal place of business and has answered.

5. Life Fund 5.1, L.L.C. ("Life Fund") is a limited liability company and may be served with process upon its principal manager Russell Mackert at 2 Riverway, Suite 1075, Houston, TX 77056.

6. A&O Life Fund Management, L.L.C. is a limited liability company and may be served with process upon its principal manager Russell Mackert at 2 Riverway, Suite 1075, Houston, TX 77056.

7. A&O Bonded Life Settlements, L.L.C. is a limited liability company and may be served with process upon its principal manager Russell Mackert at 2 Riverway, Suite 1075, Houston, TX 77056.

8. A&O, Life Fund, A&O Life Fund Management, L.L.C., and A&O Bonded Life Settlements, L.L.C. are referred to collectively as the "A&O Entities".

9. Ken Frank ("Frank") is an individual who may be served with process at his home address of 12910 Silent Shore Ln., Houston, TX 77041.

10. K & P Capital Management, L.L.C. ("K & P") is a limited liability company and may be served with process on its managing member, Frank, at his home address.

11. Adley Husni Abdulwahab a/k/a Adley Wahab ("Wahab") is an individual who may be served with process at his home address of 3007 E. Lake Falls Circle, Spring, TX 77386-2905.

12. Shepherd Capital Management ("Shepherd") is a Texas limited liability company with its principal place of business in Bellaire, Texas. Shepherd may be served with process by serving its registered agent and President, Russell E. Mackert at 5555 W. Loop. S., Ste. 300, Bellaire, TX 77401 or 2 Riverway, Ste. 1075, Houston, TX 77056.

13. Russell E. Mackert ("Mackert") is the Managing Director of the A&O Entities and the President of Shepherd. He may be served with process at his business addresses of 2 Riverway, Ste. 1075, Houston, TX 77056, 5555 W. Loop. S., Ste. 300, Bellaire, TX 77401, or wherever he may be found.

14. Chris Allmendinger ("Allmendinger") is a co-founder of the A&O entities. He may be served with process at his home address 209 Glenwood Drive, Houston, TX 77007-7012 or wherever he may be found.

15. Brent Oncale ("Oncale") is a co-founder of the A&O entities. He may be served with process at his home address 9125 Chatsworth Drive, Houston, TX 77024 or wherever he may be found.

16. The A&O Entities, Frank, K & P, Wahab, Shepherd, Mackert, Allmendinger, and Oncale are collectively referred to as the "A&O Defendants".

## VENUE AND JURISDICTION

17. Venue is proper in the Southern District of Texas because this is where all or a substantial part of the events or omissions giving rise to the claims occurred. The amount in controversy exceeds the jurisdictional requirements of this Court, and the suit presents a federal question.

## BACKGROUND FACTS

18. Biswas is a structural engineer. He resides in Houston, Texas and is currently seventy (70) years old.

19. Biswas has maintained a bank account at Washington Mutual, Inc. and an investment account with WaMu for over 20 years. Both WaMu and its managers knew that Biswas did not have the expertise in the securities markets to manage his investments. They also understood that Biswas was an older, conservative investor who wanted his accounts managed "to generate income from investments...that have historically demonstrated a low degree of risk of loss of principal value."

3

20. In 2007, Biswas' liquid net worth was approximately $420,000. That value included approximately $322,000 in his WaMu account and $100,000 in his Washington Mutual Bank account. WaMu invested Biswas' liquid net worth primarily in the Ft Unit 1070 California Municipal Income Fund ($206,000) and the Principal Investors Equity Income Fund ($116,000) – two conservative, relatively safe investments.

21. On or about September 4, 2007, Biswas met with Basham, a WaMu representative and account manager, at one of WaMu's Houston, Texas branches. During that meeting, Basham pressed Biswas to move $300,000 from the Ft Unit 1070 California Municipal Income Fund and the Principal Investors Equity Income Fund to a different fund, Life Fund 5.1, L.L.C. ("Life Fund"), which he promised would provide a far better return (15%) with no risk. Basham specifically noted that the Life Fund was supported by large insurance companies, ING and AFLAC. Basham never mentioned that the new fund was not a WaMu product or that it would not be managed by WaMu. Indeed, Basham gave every indication, including the fact that he was a WaMu representative presenting the investment opportunity in a WaMu office, that the Life Fund was a WaMu product that Basham would continue managing for Biswas through WaMu. Basham, and later the A&O Defendants, also failed to disclose, among other material facts, that Life Fund's manager, Wahab, had been convicted in Texas for the felony offense of forgery of a financial instrument and was serving five years probation.

22. In response to Basham's entreaties, Biswas stressed that his portfolio constituted most of his life savings and that he had worked for years to accumulate that value and did not want to lose it. Biswas emphasized that he wanted his investments to be managed conservatively and that

4

preserving his capital was of the utmost importance to him. Basham assured Biswas that his investments would be safe with Life Fund and that he understood Biswas' conservative risk profile.

23. Based on Basham's representations, Biswas agreed to liquidate all of his shares in the Ft Unit 1070 California Municipal Income Fund and the Principal Investors Equity Income Fund and invest $300,000 in the Life Fund. Basham presented Biswas with several forms to sign. Basham advised Biswas that it was unnecessary to read the documents, instructed Biswas to sign the forms where indicated and promised that WaMu would complete the forms. Among the forms Basham insisted that Biswas sign to was a blank withdrawal slip. Biswas never understood that his investment would be moved out of his WaMu account.

24. Shortly thereafter, Biswas contacted Basham to request information and some record of investing $300,000 in the Life Fund. Biswas ignored Basham for days. Eventually, Basham told Biswas to contact Frank, and indicated that Frank would be managing Biswas' investment in the Life Fund.

25. On information and belief, Basham concocted a scheme with the A&O Defendants to move WaMu customers' money out of WaMu and into A&O's Life Fund. At over 70 years old and without extensive investment experience, Biswas was an ideal target.

26. Unbeknownst to Biswas and while he was out of town, Basham used Biswas' wife's name to move $300,000 out of Biswas' WaMu account and, first, into an entity referred to as K&P, then into Life Fund. Biswas' wife passed away over eleven (11) years ago. Basham never informed Biswas that any money would be withdrawn from Biswas' WaMu account. Frank is listed as the managing member of K&P with the Texas Secretary of State. K&P failed to pay its taxes and has forfeited its existence.

27. WaMu eventually uncovered Basham's scheme and terminated his employment. Investigations by the Financial Industry Regulatory Authority ("FINRA") ensued. During those investigations, Frank contacted Biswas and requested that Biswas tell investigators they had known each other for a long time, well before investing in the Life Fund. Biswas refused to do so and instead cooperated with investigators.

28. WaMu's and the A&O Defendants' lack of supervision was grotesque.

29. WaMu, acting through Basham and the A&O Defendants, primarily through Frank and Wahab, completely mismanaged Biswas' portfolio. WaMu ignored Biswas' specific instructions to manage his investments conservatively. The A&O Defendants took Biswas' investment without knowing him at all. Adding insult to injury, WaMu and the A&O Defendants moved the vast majority of Biswas' liquid net worth into only one asset, which is inappropriate for even the most aggressive investors. That was inexcusable in the accounts of a 70 year old engineer who did not understand what was being done and did not have the expertise to find out. Biswas brings this action against the Defendants to return the amount of his investment in Life Fund, including all of its accrued interest, to recover the cost of this litigation, exemplary damages, and any additional damages allowed by law.

## CLAIMS FOR RELIEF

### Count 1: Violations of Sections 10(b), 20 and Rule 10b-5 – Suitability (All Defendants)

30. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

31. NASD Rule 2310 is commonly referred to as the "Suitability Rule." It provides: "[I]n recommending to a customer the purchase, sale of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the

6

facts, if any, disclosed by such customer as to his other security holdings and to his financial situation and needs." It represents a standard obligation for the likes of the Defendants toward customers such as Biswas.

32. Biswas had consistently depended on others to make his investment decisions, so he had limited investment experience at the time WaMu, in concert with the A&O Defendants, induced Biswas into moving the bulk of his liquid net worth into the Life Fund. In fact, Biswas made it a point to tell Basham that he did not understand how to invest in funds or in which funds to invest. Biswas repeatedly stressed that he wanted, and needed, for WaMu to invest his life savings conservatively. Biswas also told Basham that he had always trusted broker/managers to handle all aspects of his portfolio and that Biswas expected WaMu to do the same. Basham agreed in WaMu's behalf that it would do so conservatively.

33. Despite all these assurances, WaMu completely disregarded Biswas' wishes, and its representative's promises, to manage Biswas' money carefully and conservatively. Instead, WaMu, acting through Basham and without Biswas' knowledge, sold Biswas' conservative portfolio and replaced it with a highly speculative fund that promised a 15% return and was unrelated to WaMu. In short, WaMu and its brokers grossly, and inexcusably, departed from anything suitable for Biswas' account.

34. Rule 405 of the NYSE is commonly referred to as the "Know Your Customer Rule." It provides in part: "[E]very member organization is required ... to (1) use due diligence to learn of the essential facts relative to every customer, every order, every cash and margin account accepted ... (2) supervise diligently all accounts handled by registered representatives of the organization..." This Rule represents a further standard obligation the Defendants owned to Biswas. WaMu and the

A&O Defendants failed utterly to meet this Rule as to Biswas. None of the A&O Defendants ever met or even talked to Biswas before the investment was made.

35. The A&O Defendants spent no meaningful time or attention to know Biswas and his financial needs. They capitalized on their access to Biswas' hard-earned wealth to promote their own fees and self-interest. WaMu and its brokers knew that Biswas wanted his investment portfolio to be protected from loss. In disregard, even disdain, for Biswas' desire, and need, to be protected, WaMu, the A&O Defendants and their brokers made an unsuitable investment for his account. The Defendants' lack of regard for Biswas' best interests was intentional and/or reckless in the extreme. The Defendants thereby violated Sections 10(b) and 20 of the Exchange Act and Rule 10b-5, violated the NASD's and NYSE's rules of suitability, as well as the industry standard of conduct, which those rules embody. The Defendants are, therefore, liable to Biswas for the damages they caused him to sustain.

### Count 2:  Failure to Supervise (WaMu and the A&O Entities)

36. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

37. WaMu was negligent in failing to maintain and enforce a proper system of supervision and internal control over Basham. The lack of supervision was especially inexcusable in light of the conversion of Biswas' conservative investments into a concentrated high risk position entirely outside WaMu's management. Such negligence and/or gross negligence proximately caused damages to Biswas, for which WaMu is liable.

38. The A&O Entities were also negligent in failing to maintain and enforce a proper system of supervision and internal control over Wahab and Frank.

8

**Count 3: Breach of Fiduciary Duty (WaMu and Basham)**

39. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

40. WaMu exercised discretionary control over Biswas' accounts. Biswas granted this control to WaMu, because Basham convinced him in WaMu's behalf that WaMu had vastly superior knowledge and expertise in providing significant, but safe returns on investments in securities. In light of WaMu's purported superior knowledge and expertise in investment matters and Biswas' lack of such knowledge and expertise, together with the confidence and trust that WaMu encouraged Biswas to place in it and its brokers and that Biswas did place in them, there was, as a matter of fact and law, a relationship of confidence and trust between them. The Defendants therefore owed Biswas a fiduciary duty to invest his money suitably and to take all actions reasonably appropriate to safeguard his investments. This duty included, but was not limited to, making suitable investments, accounting to Biswas accurately and informatively, and putting Biswas' best interest ahead of their own. WaMu breached this duty consistently from day one to day end. WaMu and Basham are, therefore, liable to Biswas for the damages they caused him to sustain.

**Count 4: Negligence (WaMu and the A&O Entities)**

41. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

42. The industry standard of care is set forth by the rules of FINRA, the NASD, the NYSE, the SEC, federal and state statutes. WaMu and the A&O Entities were obligated to provide Biswas, and Biswas was entitled to rely, and did rely, upon Defendants to provide, competent, professional investment management services in accordance with those industry rules, regulations,

9

customs, and practices. By Defendants' conduct, as outlined above, they failed to abide by many of these rules including, but not limited to, the following:

(1) NASD Conduct Rule 2100 (High Standards of Commercial Honor/Equitable Principles of Trade);

(2) NASD Conduct Rule 2120 (Use of Manipulative, Deceptive or Other Fraudulent Devices);

(3) NASD Conduct Rule 2210 (d) (Standards Applicable to Communications with the Public);

(4) NASD Conduct Rule 2310 (Suitability and Fair Dealing with Customers);

(5) NASD Conduct Rule 2440 (Fair Prices and Commissions);

(6) NASD Conduct Rule 3010 (Supervision);

(7) NASD Notice to Members 97-19 (Heightened Supervisory Recommendations);

(8) NYSE Rule 342 (Supervision);

(9) NASD Conduct Rule 3110 and NYSE Rule 405 (New Account Information and Knowing Your Customer);

(10) NYSE Rule 401 (Good and Ethical Business Practices);

(11) The standards of conduct, which, on information and belief, are set forth in WaMu's and A&O's compliance and policy manuals.

43. WaMu and the A&O Entities' with reckless disregard for the rights and welfare of Biswas and were grossly negligent in failing to prevent the complained of conduct. As a result, Biswas has suffered damages for which WaMu and the A&O Entities are liable.

**Count 5: Common Law Fraud and Negligent Misrepresentation (All Defendants)**

44. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

45. Basham, Frank, and Wahab made numerous material misrepresentations and omissions in WaMu's, and the A&O Defendants' behalf on which they intended Biswas to rely and on which he did rely. Basham assured and promised Biswas that his investments would be managed conservatively and that the Life Fund was a safe investment, backed by large insurance companies. Biswas relied on these representations to his detriment. As a result, Biswas has suffered damages for which Defendants are liable. Basham, also failed to disclose to Biswas that the Life Fund would not be managed by WaMu and that investing in the Life Fund would require moving Biswas' money out of WaMu.

46. WaMu, Basham, and the A&O Defendants also failed to disclose that on April 23, 2004, Life Fund's primary manager, Wahab, was charged with the felony of forgery of a financial instrument in the State of Texas and sentenced to five years of probation. On information and belief, the A&O Defendants also misrepresented the education and business history of Wahab.

47. To the extent any Defendants did not engage in the fraud or negligent misrepresentation directly, they did so indirectly. They conspired, aided, and abetted, the above mentioned fraud and negligent misrepresentation.

**Count 6: Violations of the Texas Securities Laws (All Defendants)**

48. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

49. Upon information and belief, the A&O Defendants, Basham, and WaMu have each violated Section 33A(1) of the Texas Securities Act which provides as follows: "A person who offers or sells a security in violation of Section 7, 9 (or a requirement of the Commissioner thereunder), 12, 23C, or an order under 23A or 23-2 of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the

11

security." Accordingly, Biswas brings this action for rescission and/or all damages in the maximum amount permitted by Texas law.

50. WaMu, Bahsam, and the A&O Defendants also violated Section 33A(2) of the Texas Securities Act which provides as follows: "A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security." Accordingly, Biswas brings this action for rescission and/or all damages in the maximum amount permitted by Texas law.

## Count 7: Liability of Control Persons and Aiders

51. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

52. Defendants are each liable insofar as they are "control persons and aiders." The Texas Securities Act provides that a "person who directly or indirectly controls a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer..." As such, Biswas is entitled to recover against each Defendant.

53. The Texas Securities Act further provides that a "person who directly or indirectly with the intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were a seller, buyer, or issuer." Accordingly, Biswas is entitled to recover against each Defendant.

### Count 8: Violation of Texas Business & Commerce Code Section 17.44 (All Defendants)

54. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein

55. Defendants made false promises to Biswas, intending by those false promises to induce him to invest with the A&O Defendants. Biswas relied on those false promises in investing with the A&O Defendants. Defendants acted with actual awareness of the falsity of their promises and failure to disclose that the Life Fund was not a WaMu product and would not be managed by WaMu. Defendants are liable under this statute for Biswas' actual damages from their handling of his investments, for the statutory multiple of those damages, for Biswas' attorneys' fees, interest and costs.

56. The Defendants also took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree, and violated Chapter 541 of the Texas Insurance Code.

57. The Defendants' wrongful conduct was a producing cause of Plaintiff's injury, and Plaintiff is entitled to recover its actual damages. Further, the Defendants acted intentionally, which entitles Plaintiff to recover treble damages under Texas Business & Commerce Code section 17.50(b)(1).

### Count 9: Violation of RICO (All Defendants except Life Fund)

58. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

59. Life Fund is an enterprise engaged in and the activities of which affect interstate or foreign commerce.

60. Defendants, as persons within the meaning of 18 U.S.C.A. § 1961(3), received income derived, directly or indirectly, from a pattern of racketeering activity which was used to acquire an interest in, and operate, Life Fund in violation of 18 U.S.C.A. § 1962(a).

61. Defendants, as persons within the meaning of 18 U.S.C.A. § 1961(3), acquired an interest or control in Life Fund through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(a).

62. Defendants, as persons within the meaning of 18 U.S.C.A. § 1961(3), conducted and participated, directly and indirectly, in the conduct of the affairs of Life Fund through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c).

63. Defendants, as persons within the meaning of 18 U.S.C.A. § 1961(3), also conspired to violation 18 U.S.C.A. § 1962(a) - (c).

64. The predicate acts which constitute this pattern of racketeering activity are: securities fraud, mail fraud, and/or wire fraud.

65. These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. § 1961(5).

66. Plaintiff was injured in his business or property by reason of the Defendants' violations of 18 U.S.C.A. § 1962.

67. By reason of the Defendants' violation of 18 U.S.C.A. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. § 1964(c), to threefold the damages sustained, with interest, and reasonable attorney's fees.

### Count 10: Violations of the Texas Insurance Code (The A&O Defendants)

68. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

69. The A&O Defendants violated 28 Texas Administrative Code § 3.1701, et seq., and the Texas Insurance Code § 1111, et seq., by failing to register as Life Settlement Providers with the Texas Department of Insurance, by engaging in business with Life Settlement Providers that are not registered with the Texas Department of Insurance, by failing to disclose commissions for Life Settlement sales and business, by providing a commission for a Life Settlement sale to a financial planner, and/or failing to adhere to various other disclosure and reporting requirements. As a result of the harm caused by Defendants' conduct, Plaintiff is entitled to compensatory damages.

### Count 11: Violations of the Texas Theft Liability Act and Texas Penal Code (WaMu and Basham)

70. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein. Basham and WaMu have committed civil theft pursuant to the Texas Theft Liability Act, Texas Civil Practice and Remedies Code § 134.001, et seq., by misappropriating Plaintiff's funds. Under the Texas Theft Liability Act, "theft" is defined as "unlawfully appropriating property . . . as described by section 31.03 of the Texas Penal Code." *See* TEX. CIV. PRAC. & REM. CODE § 134.002(2). More specifically, section 31.03 of the Texas Penal Code provides for liability if a person, without the owner's effective consent, unlawfully appropriates property with intent to deprive the owner of property. Accordingly, Basham and WaMu have violated the Texas Theft Liability Act and Plaintiff is entitled to the return of his funds and actual damages caused by Basham and WaMu pursuant to Texas Civil Practice and Remedies Code

§ 134.005, including attorney's fees. Plaintiff is also entitled to uncapped exemplary damages against Basham and WaMu as a result of the theft.

### Count 12: Conspiracy (All Defendants)

71. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

72. The A&O Defendants and WAMU, through Basham, conspired to accomplish an unlawful purpose, had a meeting of the minds on the course of action, and overtly furthered unlawful purposes, including fraud, breach of fiduciary duties, violations of the Deceptive Trade Practices Act, and violations of RICO to the severe detriment of Biswas.

73. As a result of the harm caused by Defendants' conduct, Plaintiff is entitled to compensatory and exemplary damages.

### Respondent Superior

74. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

75. Basham, Frank, and Wahab were acting, at all times, in the course and scope of their employment with WaMu and the A&O Entities. WaMu and the A&O Entities are liable under the doctrine of *respondent superior* for all damages to Biswas that those representatives/brokers caused.

### Single Business Enterprise, Sham to Perpetrate a Fraud, and Alter Ego

76. Biswas repeats the allegations contained in the foregoing paragraphs and incorporates them by reference as if fully set forth herein.

77. The A&O Entities, constitute a single business enterprise and each may be liable for the actions of the other even without wrongdoing, since at least one related entity has committed a wrong.

78. The A&O Defendants also constituted a sham to perpetrate a fraud and are jointly and severally liable.

79. The A&O Defendants ignored corporate formalities, created new A&O related entities, and transferred assets among those entities to avoid liabilities.

## RELIEF SOUGHT

80. Biswas has necessarily incurred reasonable expenses for the professional services of the undersigned to prepare and prosecute this lawsuit. Having complied with all prerequisites for recovery of attorney's fees and costs, Biswas is entitled to judgment against Defendants for those expenses in a reasonable amount. *See* TEX. BUS. & COM. CODE §17.50(d); TEXAS PENAL CODE; 18 U.S.C.A. § 1964(c).

81. Biswas suffered losses in his investment account plus accrued interest (subject to a final accounting) as a result of Defendants' conduct. The vast majority of those losses were directly and proximately caused by Defendants' wrongful actions, as described above. Due to Defendants' grossly negligent and/or willful misconduct, Biswas also seeks punitive damages in an amount deemed reasonable by the Court. Due to the knowing violations of the statutes identified above, Defendants are liable to Biswas for the statutory multiples (treble) of his actual damages and for his attorneys' fees, interest, and costs.

82. In addition to the actual and punitive damages noted above, Biswas seeks the recovery of pre-judgment and post-judgment interest on his damages at the maximum rate allowed by law.

## **PRAYER**

WHEREFORE, Biswas prays that Defendants be cited and ordered to appear and answer herein. Biswas further prays that Biswas be awarded full recovery from Defendants as follows:

(1) Actual damages, including the return of the $300,000 that was wrongfully moved from his WaMu account to the A&O Defendants plus all accrued interest;

(2) Punitive or multiple damages in an amount governed by statute or as reasonably determined, whichever amount is greater;

(3) Pre-judgment interest at the maximum rate allowed by law;

(4) Attorneys' fees;

(5) Expert witness fees;

(6) Post-judgment interest at the maximum rate allowed by law;

(7) Costs of Court; and

(8) Such other relief, either at law or in equity, to which Biswas may show himself justly entitled.

Respectfully submitted,

THE WYNNE LAW FIRM

By: /s/ *David E. Wynne*
    Kenneth R. Wynne
    Fed. Bar No. 837
    David E. Wynne
    Fed. Bar No. 566468
    2730 JPMorgan Chase Tower
    Houston, TX 77002
    Telephone: (713) 227-8835
    Facsimile: (713) 227-6205
    Email: dwynne@wynne-law.com
           kwynne@wynne-law.com

**ATTORNEYS FOR BISWAS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was served upon the parties listed below by electronic mail as listed on the court's ECF noticing system or by regular U.S. First Class Mail on this the 22nd day of December, 2008.

Retta A. Miller
Jackson Walker, L.L.P.
901 Main Street, Suite 6000
Dallas, TX 75202-3797

Matthew B. Henneman
Watt Beckworth Thompson
 & Henneman LLP
1800 Pennzoil Place-South Tower
711 Louisiana
Houston, TX 77002

/s/ *David E. Wynne*
David E. Wynne